Moseley
vs.
White.

LEWIS B. MOSELEY vs. DAVID WHITE.

Error from the Circuit Court of Dallas County—Before the Hon. P. T. HARRIS.

Where a declaration states a recovery against the defendant to have been by a decree of " the honorable, the orphan's court" of a certain county, it is sufficiently descriptive, as to the style of the court, of the county court of said county, doing orphans' business; and the certifi- cate of the clerk of the county court of the proper county, that the proceedings, as certified, constitute a true transcript of the settlement, &c. " as it is of record on the minutes B. of the orphans' court in my office," is also sufficiently descriptive of the court, and equivalent to a description of the same as the " county court, while exercising the ju- risdiction of an orphans' court."

Mosely brought suit against White, in the Circuit Court, in October, 1831, to recover the amount of a decree of the county or orphans' court of Dallas county. The declaration states the decree as having been made by " the honorable, the orphans' court, held within and for the county of Dallas." The defendant pleaded nul tiel record. The bill of excep- tions shows that the record introduced as evidence, making a final settlement of the estate of the intestate, whereof the defendant was administrator, and a decree against him, was certified by the " clerk of the county court of Dallas" as a

Moseley
vs.
White.

,rue transcript of the settlement, &c. " *as it is of record on minutes B, of the orphans' court in my office.*"

The Circuit Court decided that there is no such court known to the law as the orphans' court, and rendered judgment for the defendant. The plaintiff excepted to this opinion, and in this court, assigned the same for error.

PICKENS, for Plaintiff in error.

The first inquiry that naturally presents itself here is, as to what kind of a defence is available under the plea of *nul tiel record.* The record, introduced, I contend, was conformable to the declaration, and sustained it. Let it be admitted, if you please, that the court is improperly entitled, and that there is no such court as the orphans' court of Dallas county, and the defendant would still have no right to avail himself of this objection in the state of the pleadings which the record presents. The defendant pleaded *nul tiel record;* and on this plea issue was joined. Upon this issue it was sufficient if the record corresponded with the declaration. If the defendant intended to rely upon the objection, that there is no such court as the orphans' court, he ought to have demurred. The question to be tried under the plea which was pleaded in this case, is matter of verity and not matter of law.— The court, therefore, erred, in sustaining a mere legal objection under this plea.

But if the court should even differ with me on this point, they will still, I think, not sustain the opinion of the court below, that there is no such court known to the laws of this state as the 'orphans' court,' and that a record certified as this one, was inadmissible evidence under the declaration. The term, orphans' court, is sufficiently descriptive of the court here intended; and although the language may not be as technical, as to say the county court doing orphans' business yet the defendant is as well informed of the court intended, as if the latter mode of expression had been adopted. The object of the description is to designate and distinguish the

Moseley
vs.
White.

court so that it may be known.   If one should declare on a court, held twice a year, stating who was the Judge, and giving such other description that no man could mistake it, even though it were not named at all, would not such declaration be sufficient ?

Besides, in the first establishment of this court, it was called the orphans' court.   Its powers and jurisdiction were afterwards conferred on the county court ; which court still has particular times at which it sits for the transaction of orphans' business : it then sits as orphans' court, and may very properly be so styled.   I contend that if we have no orphans' court, we have no court of chancery, for we have no separate court so named.   The circuit court at particular times does chancery business ; at which times it is a chancery court, as the county court is an orphans' court when it does orphans' business.

But I go farther than this.   I maintain that under the language of the law, we have an orphans' court.—*Aikin's Dig.* 248.   Here we have laws, now in force, calling this court the orphans' court.   If this language means nothing in our declaration, or in the clerk's certificate of the record, then *it* means nothing in the law; which will not be insisted on.— See also, *Aik. Dig.* 252, 253.

STEWART, *contra.*

We are not concluded by the reason given by the court below, for the exclusion of the record.   It may be a right judgment, given for a wrong or insufficient reason.   But I contend that the reason given is a good one.   Our courts are known by definite and precise titles.   We have no such court as the orphans' court.   We have a county court, which transacts ophans' business, as well as various other kinds of business.   If a court is to be designated by the business which it transacts, our courts would have numerous titles.   More strictness is required in declaring on records than on any thing else.   The loose descriptions, therefore, which the

counsel has contended would be sufficient, would not satisfy the law, nor conform to that legal practice which has received the sanction of courts of justice.

But this record is objectionable on other grounds. It has no title. It does not appear who was the judge. It does not appear where the court was held. All that we have is the certificate of the clerk. He certifies that it is from the minutes of the orphans' court in his office. He does not even say orphans' court of Dallas county. The clerk styles himself the clerk of the county court of Dallas county. There is too much uncertainty here. Owing to the divisions which have been made of counties, the records of one county are frequently in the office of the clerk of another county : it does not follow of course, therefore, that because these proceedings are in a certain book in the clerk's office, that they belong to the county of Dallas.

The counsel says that the only matter in issue is, whether there be such a record as is set forth in the declaration.— True ; but this involves the question, whether there be any such court. If there be no such court, there is no such record. And the reason that there is no such record, may be that there is no such court.

PICKENS, in reply.

The bill of exceptions shows the ground on which the court below decided the case against us. Will this court now search after other grounds on which a like decision might have been made ? I think not. The question must turn upon the point stated in the bill of exceptions. The record was not objected to, on any other grounds but this : it was contended that there was no such court as the orphans' court.

But I would ask the court if the caption be of any importance to a record ? It is not the caption, but the certificate of the clerk that gives verity to the record. Neither is it of any importance what particular man sat as judge.

The defendant, according to the most approved forms of the plea of *nul tiel record*, is required to state that there is no such record as is stated to have existed in such a court. It puts in issue the verity of the record, and not the style of the court.

By Mr. Chief Justice Saffold :

This suit was brought in the Circuit Court, by the present plaintiff, in October, 1831, to recover of the defendant the amount of a decree of the County or Orphans' Court of Dallas.

The declaration, in allusion to the cause of action, charges that the plaintiff, " by the consideration of the honorable the Orphans' Court, held within and for the county of Dallas," recovered a decree against the defendant, as administrator of E. Lane, for eight hundred and sixteen dollars, as by the record now remaining in said court, appears, &c. To which the defendant pleaded *nul tiel record*.

A bill of exceptions shows, that on the trial, the plaintiff offered in evidence what purported to be a record, of the 7th of April, 1828, showing a final settlement of the intestate's estate, by White, the administrator, and a decree against him for the sum claimed ; together with a long catalogue of debts allowed to other creditors, all appearing to have been scaled, as in case of insolvency. To this is appended the certificate of " J. D. Craig, as clerk of the County Court of Dallas," that the same is a true transcript of the settlement, &c. " as it is of record on minutes B, of the Orphans' Court, in my office :" That the Circuit Court thereupon decided there was no such court known to the laws of this state, and rendered judgment for the defendant. In this judgment it is contended the court erred.

The objection which was sustained to the record, is understood to be, that the transcript offered in evidence, is variant from the record described in the declaration, as respects the style or title of the court in which the decree was rendered—that it ought to have been described as a decree of the " County Court," instead of the " Orphans' Court" of Dallas county. To under-

stand the nature of this supposed variance, it is necessary to refer to several parts of the statute law creating and modifying the county court, and regulating its powers and duties. As early as 1806 and '7, the county court was organized, consisting of five justices of the peace, and of the quorum, one of whom was commissioned "chief justice of the orphan's court." They were authorised to hold the county court proper, and at the same time to hold and keep a court of record, to be styled and called "the orphan's court of the said county," with full jurisdiction of all testamentary and other matters pertaining to an orphan's court, or court of probate, within their respective counties. It was also provided, at this early day, that this chief justice should cause to be kept by the register of the orphan's court, a docket, &c.:— That the clerk of the county court should, by virtue of his office, be "register of the orphans' court" of the same county; "should keep and preserve all records, files, papers, and proceedings of the said court as an orphan's court, separate and distinct from the records, files, and proceedings of the county court," &c.[a]

In 1819, this court was remodelled, by the establishment of an "inferior court," consisting of five justices, styled justices of the county court. To this court, which in some parts of the same statute is called the *county court*, was given, besides the jurisdiction previously vested in the county court, and orphans' court, concurrent jurisdiction with the circuit courts, in actions of *debt* and *assumpsit*. It was authorised, at its second and fourth annual terms, to exercise only, the jurisdiction previously belonging to the orphan's court; and the clerks of the inferior courts were declared to be the clerks of these intermediate courts for the adjustment of orphan court business.[b] By the same act these justices were authorised to elect one of their own body as "chief justice."

In 1821, this court was again remodelled, and styled the "county court," and was directed to be holden by one judge only. It was then also provided, that the county court thus organized, and the judges thereof respectively, should be vested with all the powers previously exercised by the said county and inferior

*Margin notes:*

Moseley vs. White.

[a] Aik. D. 248, 249.—Toul. Dig. 175, '6.

[b] Toulm. Dig. 176, 177, 178

Moseley
vs.
White.

courts, and the chief justice thereof, except such as should be' otherwise directed. It was then farther directed, that the clerks of the inferior courts should be the clerks of these county courts respectively, and perform all the duties as such; should have custody of the records and papers of the orphans' and county courts previously established in their respective counties. This appears to have been substantially the organization of the tribunal in question, in 1828, when this decree was rendered—that the court existed as a county court, to be holden by only one judge, and in this court was vested all the jurisdiction previously exercised by the original county court, orphans' court, and chief justice thereof; by the inferior court which succeeded it, and the chief justice thereof. This jurisdiction, as we have seen, embraced, besides cognizance of particular common law actions, (and which was extended by this latter act,) all the powers and duties appropriately incident to an "orphans' court." It also appears, that the clerks of the present county courts, are charged with all the subsisting duties heretofore required of the clerks of the county and inferior courts, and of the register of the orphans' court; and that among the duties is included that of keeping and preserving "all records, files, papers, and proceedings of the said court, as an orphans' court, seperate and distinct from the records, files and proceedings of the county court." This direction of the law may well account for the form and substance of the certificate of the record before us, and explain why the clerk of the *county court* should have certified to a true transcript, as it is of record on minutes B, of the *orphans' court* in his office.

It may also be remarked, that in 1830, and before the institution of this suit, the legislature acknowledged at least the nominal existence of this court, by directing that "all decrees made by the orphans' court on final settlements on the accounts of executors, administrators, &c. shall have the force and effect of judgments at law. And again, in 1832, which was subsequent, have in two instances made similar recognitions, which may be regarded as a legitimate interpretation of the statutes referred to on this point.[a]

[a] Aik. D. 252, 253.

But if it be conceded that the description of the court in the declaration, and in the clerk's certificate, is not *strictly and technically* correct; that since the reorganization of the court in 1821, its true title in general, is that of the county court; and when holden for the settlement of decedents' estates, and other orphans' business, should be styled the "county court," or "county court sitting as an orphans' court," it does not follow, that the description given was not sufficiently certain.   The certainty required in pleadings generally, is defined to be, such as "may be understood by the party who is to answer them, by the jury who are to ascertain the truth of the allegations, and by the court who are to give judgment."[a]   Certainty to a *certain intent, in general*, is held to mean, what upon a fair and reasonable construction may be called certain, without recurring to possible facts, which do not appear ; and this is required in declarations, replications, indictments, &c.[b]   It is also said less certainty is requisite, when the law presumes that the knowledge of the facts is peculiarly in the opposite party.[c]

It is true, that in declaring on judgments, great certainty is required in the statement or description of the judgment ; and a material variance, will in general, be fatal.   It has been held, that in stating the amount of the judgment, the omission of only a penny, is a fatal variance, and cannot be cured by a *remittitur*.[d] In principle, there can be no difference between the effect of a variance to the amount of one penny, or of one or more pounds or dollars ; in either case the sum is clearly and obviously different.   But a slight inaccuracy in the description of the court, which can leave no doubt upon the mind as to the reference, has not necessarily the same effect, and has been viewed by the courts of the highest authority in a different light.   It has been ruled, that where a declaration in an action for a malicious prosecution, alleged that the defendant caused the plaintiff to be indicted at the " general *quarter* sessions" of the peace for Middlesex, and the record stated the indictment to have been found at the " general sessions," it was held to be sufficient, the of-

fence being cognizable at such general sessions.[a] Also, that a bill of Middlesex is well described as a "precept of the King."[b] On the authority of these and other cases, *Stark* maintains, that "where it is necessary to allege a court having judicial authority, it is not essential that the style set out in the record, should be exactly copied."[c]

In the Crown cases cited in argument, where, as contended, the greatest strictness should be observed, the English courts have held, that slight misdescriptions which could not mislead, would be disregarded—such as to describe the court as 'the court of the King's Palace *at* Westmister,' when in the record was called 'the court of the King's Palace *of* Westminster;' or to aver that the cause came up to be tried *by a jury of the county*, when the record stated that the jury came *of the neighbourhood of Westminster*, the cause having in fact been so tried, and no county being mentioned in the record. These discrepances were held to furnish no objection to the proceedings.[d]

In this case, the description of the record, both in the declaration and certificate of the clerk, is believed to be sufficiently certain; that the orphans' court in this state can be understood as no other than the "county court" while exercising the jurisdiction of an "orphans' court," by which latter description or title it is recognised and designated by several existing statutes; and that no one can doubt as to which tribunal the record belongs.

The judgment of the Circuit Court is therefore considered erroneous, and must be reversed; but as the record contains other issues, some of them requiring trial by jury, and which have not been disposed of in the Circuit Court, the cause is remanded for further proceedings.

